1

2

3

4

5

6

7

8
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
9
AT TACOMA

10
TRISHIA B.,

11
            Plaintiff,

CASE NO. 2:22-CV-438-DWC

12
    v.

ORDER REVERSING AND
REMANDING FOR FURTHER
PROCEEDINGS

13
COMMISSIONER OF SOCIAL
SECURITY,

14
            Defendant.

15

16
        Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of the denial

17
of her applications for disability insurance benefits. Pursuant to 28 U.S.C. § 636(c), Fed. R. Civ.

18
P. 73 and Local Rule MJR 13, the parties have consented to proceed before United States

19
Magistrate Judge Christel.

20
                                BACKGROUND

21
        Plaintiff filed for disability insurance benefits and supplemental security income in

22
January 2017, alleging she became disabled on September 15, 2016. Administrative Record

23
(AR) 23. Her applications were denied initially and on reconsideration, and again following a

24
hearing before an Administrative Law Judge (ALJ). AR 321-37, 343-47.

1    Plaintiff requested review of that denial and the Appeals Counsel remanded her case to

2   the ALJ with instructions to reconsider Plaintiff's mental limitations and provide a function-by-

3   function assessment of Plaintiff's abilities to perform work-related activities. AR 23. To that end,

4   on December 1, 2020, the ALJ conducted a telephonic hearing at which Plaintiff was again

5   represented and again testified. AR 20-36. In addition, the ALJ agreed, at Plaintiff's request, to

6   hold a supplemental hearing which was conducted telephonically on June 3, 2021, at which

7   Plaintiff was again represented and gave additional testimony. AR 23.

8    On June 15, 2021, a different ALJ issued a new decision finding Plaintiff not disabled.

9   AR 23-36. Plaintiff requested review, which was denied by the Appeals Council on March 25,

10   2022, making the ALJ's last decision the final decision of the Commissioner for purposes of

11   judicial review. AR 1-5; 20 C.F.R. §§ 404.981, 416.1481.

12                                    STANDARD

13    Pursuant to 42 U.S.C. § 405(g) this Court may set aside the Commissioner's denial of

14   social security benefits if the ALJ's findings are based on legal error or not supported by

15   substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

16   Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). However, the

17   Commissioner's decision must be affirmed if it is supported by substantial evidence and free of

18   harmful legal error. 42 U.S.C. § 405(g); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.

19   2008).

20    Substantial evidence "is a highly deferential standard of review." *Valentine v. Comm'r of*

21   *Soc. Sec. Admin.,* 574 F.3d 685, 690 (9th Cir. 2009). The U.S. Supreme Court describes it as

22   "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). "It means—and

23

24

1   means only—such relevant evidence as a reasonable mind might accept as adequate to support a

2   conclusion." *Id*. (internal quotations omitted).

3                                              THE ALJ's FINDINGS

4          The ALJ found Plaintiff to suffer from the severe impairments of Sjogren's syndrome,

5   arthritis adjustment disorder with depressive symptoms, hypothyroidism, and obesity. AR 26.

6          The ALJ determined that Plaintiff had a residual functional capacity (RFC) to perform

7   light work as defined in 20 CFR 404.1567(b) and 416.967(b), limited to standing and/or walking

8   in two hour intervals for up to six to eight hours per day; frequently climbing ramps or stairs but

9   never climbing ladders, ropes, or scaffolds; only occasional balancing, kneeling, crouching, and

10  crawling; no limit on reaching, handling, or fingering; the need to avoid concentrated exposure to

11  excessive vibration and workplace hazards such as working with dangerous machinery and

12  working at unprotected heights; only simple routine tasks in a routine work environment with

13  simple work-related decisions with superficial work-related interaction with co-workers and

14  supervisors, meaning, for example, no supervising other employees, no extensive teamwork, and

15  no team problem solving projects; only incidental interaction with the public, such that

16  interaction with the public is not an essential part of job duties; the ability to focus on simple

17  routine tasks within a normal work break schedule (a break every 2 hours). AR 28-29.

18         With the assistance of vocational expert testimony, the ALJ found that Plaintiff remained

19  capable of performing work existing in significant numbers in the national economy such as

20  routing clerk, production assembler, and electrical assembler. AR 35.

21  ///

22  ///

23  ///

24

1

<u>DISCUSSION</u>

2      Plaintiff argues the ALJ failed to provide specific and legitimate reasons for rejecting the

3 opinions of treating physician Jill Fuller, D.O., and examining psychologist Majid Azzedine,

4 Ph.D.. Dkt. 10 at 1.

5     I.    <u>Medical Evidence</u>

6      A.  <u>Standard</u>

7      This case was filed before March 27, 2017 and is therefore governed by the old

8 regulations for evaluating opinion evidence. 20 C.F.R. § 404.1527(b). The ALJ must provide

9 "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or

10 examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Embrey v.*

11 *Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)).

12 When a treating or examining physician's opinion is contradicted, the opinion can be rejected

13 "for specific and legitimate reasons that are supported by substantial evidence in the record."

14 *Lester*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995);

15 *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting

16 out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his

17 interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.

18 1998) (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

19      B.  <u>Analysis</u>

20        i.    <u>Majid Azzedine, Ph.D.</u>

21      In April 2017, Majid Azzedine, Ph.D. (Azzedine) examined Plaintiff at the request of the

22 Seattle office of state disability services. AR 1058-62. He also reviewed Plaintiff's stepmother's

23 third-party report. AR 1038. Azzedine found Plaintiff "difficult to interview". AR 1058. He

24

noted that Plaintiff first saw a "behavioral health professional" in September 2016 who she did not like because this person told her to exercise and change her diet, and that she was unlikely to qualify for disability benefits, all of which led Plaintiff to call "Healthpoint" and complain. AR 1059.

Plaintiff told Azzedine there was "no hope" for her "physical restoration". AR 1060. She reported her "normal" weight was 165-170 (which Azzedine noted "would still be on the heavy side given she is not taller than 5.2 foot") but that she was up to 270 "last year." AR 1061. Azzedine offered a "provisional diagnosis" of "Depressive Disorder due to Hypothyroidism, with depressive features" explaining "almost complete recovery of cognitive deficits and mood symptoms can be expected with thyroid replacement in individuals with severe hypothyroidism" however, Azzedine opined that it was "doubtful [Plaintiff] will be able to comply with a work schedule in her present cognitive and medical/physical state…". AR 1063.

The ALJ gave this opinion "some weight" explaining that Plaintiff's "fatigue and pain are expected to cause some limitations…[however Azzedine's findings] were limited, as he only examined [Plaintiff] once and reviewed reports written by [her] step-mother." AR 32. The ALJ noted that Azzedine's "mental status examination [revealed] that [Plaintiff] was able to recite a five digit span forward and five digit span backward, [but] she struggled with serial seven subtractions, and she struggled to do mathematical calculations." *Id*. However, he found her "remote and recent memory appeared intact". *Id*.

Plaintiff insists "there would be no reason to send claimants to consultative psychological evaluations" if only seeing them once was enough to reject them, and the fact Azzedine only reviewed the step-mother's third-party report, "seems like a disingenuous reason for rejecting

1  [his opinion] when the Commissioner ordered this evaluation and was in control of the records

2  provided…". Dkt. 10 at 9.

3       While the Court concurs with Plaintiff that the very nature of a one-time consultative

4  examination limits its value, here Azzedine based his opinion in part on Plaintiff's

5  "medical/physical" state without the benefit of objective medical evidence to substantiate her

6  subjective reporting" and after having met her only once—a legitimate reason to discredit a

7  medical opinion. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010)(upholding

8  the conclusion that a doctor was in a poor position to assess a claimant after only one visit due to

9  lack of "any previous interaction with the claimant").

10      Relying on Plaintiff's subjective reporting was particularly problematic in this case,

11  where the ALJ rejected Plaintiff's credibility and Plaintiff has waived objection[1]. *McKay v.*

12  *Ingleson*, 558 F.3d 888, 891 n. 5 (9th Cir. 2009) ("Because this argument was not raised clearly

13  and distinctly in the opening brief, it has been waived"). In so doing, the ALJ pointed out that

14  Plaintiff had engaged in minimal mental healthcare, frequently missed appointments (AR 31,

15  1969), and "has been noted to no-show frequently for physical therapy programs"(AR 1705) as

16  her "goal of obtaining disability" seems to be her focus (AR 31). Failure to follow treatment can

17  "cast doubt on the sincerity" of the claimant's testimony concerning her symptoms, as the ALJ

18  found to be the case here. *Fair v. Bowen*, 533 F.2d 597, 603 (9th Cir. 1989).

19

20

---

21      [1] Though Plaintiff did not object to the ALJ discrediting her self-reports, in her reply she states, "As
    Defendant has placed these activities at issue, Plaintiff will show that the ALJ erred when she relied upon them to
22  reject Plaintiff's testimony such that the Court should not rely on them to affirm the ALJ's decision." Dkt. 12 at 2.
    Plaintiff misreads the record. The Commissioner did not "place" Plaintiff's daily activities "at issue": the ALJ
    rejected Plaintiff's credibility based, in part, on those activities and Plaintiff failed to object to this finding. Thus, the
23  Court certainly may rely on this finding in its assessment of Plaintiff's arguments. *See Ahearn v. Saul*, 988 F.3d
    1111, 1117 (9th Cir. 2021)(routine activities such as playing video games, using public transportation, and preparing
24  meals may undercut a claimant's testimony).

1    In sum, this Court finds the ALJ provided specific and legitimate reasons to discount

2    Azzendine's opinion.

3         ii.    Jane Fuller, D.O.

4    Next, Plaintiff objects to the ALJ's treatment of a "check-the-box" opinion by Jane

5    Fuller, D.O. (Fuller) expressed on a state-created DSHS physical evaluation form dated

6    November 29, 2016 indicating that Plaintiff would be unable to meet the demands of even

7    "sedentary" work for "12" months due to bilateral headaches with nausea, speech changes and

8    cloudy thoughts; daytime somnolence; hypothyroidism; hypertension; extremity numbness; and,

9    muscle spasm. AR 1130-31.

10    The ALJ stated that she gave Fuller's opinion "limited weight" because it was temporary

11    in nature and lacked evidentiary support:

12        Dr. Fuller opined that the claimant would be unable to meet the demands of even
         sedentary work for twelve months. (Exhibit 13F/18, 24). However, this restriction
13        was temporary in nature and **not intended to apply to the claimant's condition
         through the entire period of alleged disability.** Furthermore, this restriction is
14        based on the **claimant's headaches, daytime somnolence, hypothyroidism, and
         hypertension** (Exhibit 13F/17), but, as noted above, **the claimant's migraine
15        condition has been resolved, she has consistently denied fatigue.** (Exhibits
         10F/2; 11F/6; 12F/6, 10; 14F/5, 18, 30, 37; 19F/6). In the contemporaneous
16        treatment notes, Dr. Fuller indicated that the claimant had appeared alert and
         oriented, with intact memory and concentration, with normal speech, and with a
17        normal affect. **The physical findings were also generally unremarkable as well.**
         (Exhibit 13F/13). **Based on its temporary nature and lack of evidentiary
18        support**, the opinion of Dr. Fuller is given limited weight.

19    AR 32-33 (emphasis added).

20    Plaintiff argues that the "temporary" nature of Fuller's opinion is not a legitimate reason

21    to reject it because an individual is considered disabled if her condition is disabling for 12

22    continuous months. Dkt. 10 at 5. Plaintiff also insists that the ALJ's finding that Plaintiff's

23

24

ORDER REVERSING AND REMANDING FOR
FURTHER PROCEEDINGS - 7

migraine condition and that Plaintiff "consistently denied fatigue" are not supported by substantial evidence. *Id*. at 5-6.

The Court finds the ALJ has not sufficiently explained why the ALJ concluded Plaintiff's fatigue and headaches were resolved, especially where Fuller herself indicates that Plaintiff needed an "MRI" and consultations with "Neurology", "Sleep", and "Endocrine" (AR 1130) suggesting these symptoms required ongoing evaluation.

The Court also finds that the "temporary" nature of Fuller's opinion was not a legitimate reason to reject it. Notably, almost exactly one month before Fuller issued her opinion, Nelson Chiu, M.D. (Chiu) completed the same form (on October 31, 2016) also opining that Plaintiff was temporarily unable to perform even sedentary work. AR 730. And in the very paragraph proceeding her discussion of Fuller, the ALJ found that even Chiu's far more conservative opinion (that Plaintiff would be unable to work for two months due to hypothyroidism and migraine headaches) was also only entitled to "limited weight" because of its temporary nature. AR 33 (emphasis added). Although Plaintiff does not challenge this finding, it is notable because unlike with Fuller, the ALJ did not reject Chiu's opinion that Plaintiff suffered from fatigue and headaches.

The Court also concurs with Plaintiff that rejecting Fuller's opinion because it was "temporary", or limited to 12 months, was not harmless[2] because under the regulations a

---

[2] "[H]armless error principles apply in the Social Security context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if it is not prejudicial to the claimant or is "inconsequential" to the ALJ's "ultimate nondisability determination." *Id*.; *see also Stout v. Commissioner, Social Security Admin*., 454 F.3d 1050, 1055 (9th Cir. 2006). The Ninth Circuit has stated "'a reviewing court cannot consider an error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (*quoting Stout v. v. Comm'r, Soc. Sec. Admin*., 454 F.3d 1050, 1055-56 (9th Cir. 2006)). The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Id*. at 1118-1119 (*quoting Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

1   reasonable ALJ crediting this opinion might have found that Plaintiff was entitled to a period of

2   disability by fully crediting Fuller. *See* 20 C.F.R. §§ 404.1505, 416.905 (defining "disability" as

3   "the inability to engage in any substantial gainful activity by reason of any medically

4   determinable physical or mental impairment or combination of impairments that can be expected

5   to result in death or that has lasted or can be expected to last for a continuous period of not less

6   than 12 months").

7          In sum, the Court finds the ALJ did not provide specific and legitimate reasons to reject

8   Fuller's opinion.

9                                    CONCLUSION

10         For the foregoing reasons this case is REVERSED and REMANDED for the

11  Commissioner to reevaluate Fuller's opinion, reassess Plaintiff's RFC as necessary, and

12  reevaluate the remaining steps of the sequential evaluation as necessary.

13         Dated this 30th  day of September, 2022.

14

15                                              David W. Christel
                                                United States Magistrate Judge
16

17

18

19

20

21

22

23

24

ORDER REVERSING AND REMANDING FOR
FURTHER PROCEEDINGS - 9